## UNITED STATES DISTRICT COURT
### District of Maine

JOAN M. KELLY,                          )
                 Plaintiff             )
                               )
v.                                      )
                               )   Docket No. 2:22-cv-00339-LEW
OXFORD COUNTY, OXFORD COUNTY            )
SHERIFF'S OFFICE, CHRISTOPHER R.        )
WAINWRIGHT, AND JAMES H.                )
URQUHART,                               )
                 Defendants            )

## MOTION TO DISMISS BY OXFORD COUNTY
## AND OXFORD COUNTY SHERIFF'S OFFICE
## FED. R. CIV. P. 12 (b)(6)

NOW COME the Defendants, Oxford County and Oxford County Sheriff's Office (the "County Defendants"), by and through their undersigned attorney, and move for dismissal of Plaintiff's Complaint, as against them, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Plaintiff's complaint alleges a variety of state and federal causes of action stemming from her employment with, and resignation from, the Oxford County Sheriff's Office. Plaintiff alleges that she began working for the Sheriff's Office in April 2018, and that she would often clock out of work to attend the public portions of meetings of the Oxford County Commissioners. Plaintiff makes vague allegations that the Sheriff of Oxford County, Christopher Wainwright, tried to find a way of preventing her from attending those Commissioners' meetings because he was concerned with "her willingness to address issues with the operation of the Office, including with respect to the unequal treatment of employees, and ostensible cover up of employee misconduct." ECF No. 3-2 at 2, ¶ 10. Plaintiff goes on to allege that she and the Sheriff had a confrontation on December

6, 2019, about the Sheriff failing to attend to "a pressing issue with a member of the public," ECF No. 3-2 at 3, ¶ 11, and that thereafter she was placed on administrative leave on December 9, 2019. Plaintiff alleges she was then afforded an opportunity on January 13, 2020, to meet with the Chief Deputy, James Urquhart, for a *Loudermill* meeting. ECF No. 3-2 at 3-4, ¶ 15. Thereafter, a hearing was held in front of the Oxford County Commissioners on January 30, 2020, and continued on February 6, 2020. ECF No. 3-2 at 3-4, ¶¶ 15, 18. Plaintiff alleges that the Commissioners issued a written decision on February 18, 2020, finding that there was no just cause for her termination. ECF No. 3-2 at 5, ¶ 21.

Plaintiff's Complaint alleges that following the Commissioners' decision, there were multiple meetings and email exchanges about the discipline that would be imposed on Plaintiff as a result of the December 6, 2019, confrontation. ECF No. 3-2 at 5-6, ¶¶ 23-35. Ultimately, a return to work was scheduled for May 21, 2020; however, after a meeting to review paperwork on that date, Plaintiff submitted a letter of resignation and left the building. ECF No. 3-2 at 8-10, ¶¶ 32-36. Plaintiff alleges that her resignation was a "constructive discharge" as a result of delay tactics in returning her to work, changes to her job description, and unmerited disciplinary action. See, e.g., ECF No. 3-2 at 10-12, 14, ¶¶ 36-39, 48.

## STANDARD OF REVIEW

It is well-established that under Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief. That pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Rule 12(b)(6)

provides that a complaint can be dismissed for failure to state a claim upon which relief can be granted.

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 at 678, (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means " 'something more than merely possible' or 'merely consistent with a defendant's liability.' " *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)).

The First Circuit has stated that it engages in a two-step process when weighing the plausibility of a claim. *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (citing *Garcia-Catalán v. United States,* 734 F.3d 100, 103 (1st Cir. 2013); *Rodríguez-Reyes v. Molina-Rodríguez,* 711 F.3d 49, 53 (1st Cir. 2013)). "First, we separate facts from conclusory allegations." *Id.* (citing *Iqbal,* 556 U.S. at 679). "Second, we determine whether the factual allegations that remain give rise to a plausible claim for relief." *Id.* (citation omitted). "The second step entails a decision as to whether the claim as stated admits of a `reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678). "The allegations cannot be `too meager, vague, or conclusory to remove the possibility of relief for the misconduct alleged.'" *Id.* (citation omitted).

Plaintiff's complaint sets forth five[1] separate causes of action, four of which are directed at the County Defendants. Plaintiff's bare-bones allegations against the County defendants are too

---

[1] Plaintiff's Complaint actually states six causes of action, the sixth being a claim for punitive damages. But this Court has recognized that "[p]unitive damages … do not constitute a separate cause of action, but instead form a *remedy*

meager, vague and conclusory to meet the pleading standard to plausibly set forth a claim for relief as against those defendants. Plaintiff sets forth very few actual facts, as opposed to conclusory statements, to support her claims in Counts I, II, III, or IV against the County defendants, as will be discussed at length below. Count VI, which seeks punitive damages, should also be dismissed for failure to state a claim as an independent cause of action.

## LEGAL ARGUMENTS

### I.    PLAINTIFF'S COMPLAINT FAILS TO ADEQUATELY ALLEGE FACTS TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE MAINE HUMAN RIGHTS ACT AGAINST THE COUNTY DEFENDANTS.

Count I of Plaintiff's Complaint alleges that she was subjected to unlawful employment discrimination because she is a woman. ECF No. 3-2 at 13-14, ¶¶ 43-44. In order to state a claim of unlawful employment discrimination under Maine's Human Rights Act ("MHRA"), 5 M.R.S. § 4572(1)(A), a plaintiff must allege (1) that she is a member of a protected class; (2) that she performed her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that she was treated differently from similarly situated men. *Charette v. St. John Valley Soil and Water Conservation Dist.,* 332 F.Supp.3d 316, 348-49 (D. Me. 2018). Kelly's claim fails to adequately allege the fourth requirement.

Although Kelly claims that she was treated differently than other male employees, she does not allege that she was similarly situated to those male employees. For example, Kelly alleges that other male employees had insubordinate confrontations with the Sheriff and were not disciplined: Chief Deputy Urquhart allegedly had a loud confrontation with the Sheriff ending with Urquhart walking off the job, later to return without being disciplined; and Lt. Chancey Libby allegedly

---

available for some tortious or otherwise unlawful acts." *Rocque v. Zetty, LLC*, 456 F.Supp.3d 257, 267 (D.Me. 2020) (quoting *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000) (emphasis in original)).

4

loudly confronted the Sheriff (Kelly does not specify what the alleged confrontation was about) and walked off the job, later to return with no disciplinary consequences. ECF No. 3-2 at 10-11, ¶ 37. Neither of these examples suggest, much less allege, that Kelly was similarly situated to either Urquhart or Libby—both male employees were high-ranking law enforcement officers, while Kelly was a member of the office support staff and had only been employed with the County for approximately a year and a half. See ECF No. 3-2 at 2, ¶ 6. Although Kelly alleges a difference in the treatment of "support staff" versus law enforcement officers by the County, this is not a basis from which the Court could conclude that Urquhart or Libby was similarly situated to Kelly. Furthermore, while Kelly alleges that the two male law enforcement officers had "loud confrontations" with the Sheriff, she does not allege that either of them asked the Sheriff whether he "does anything?", or any made any other blatantly insubordinate statements. ECF No. 3-2 at 3, ¶ 11. Nor does Kelly make any specific allegations about the origins or content of the "loud confrontations" with Urquhart or Libby to plausibly state a claim that she was similarly situated and yet treated differently on the basis of her sex.

Kelly also alleges that, at a termination hearing before the Oxford County Commissioners, Defendants Wainwright and Urquart "acknowledged that similar 'insubordination' had occurred with other male employees [and] they contended that insubordination was more acceptable" than Kelly's insubordination.  ECF No. 3-2 at 4-5, §§ 18-21.  Here too, Kelly fails to allege that she was similarly situated to these anonymous male employees. Moreover, this allegation is too vague to survive dismissal because there is no indication of who the male employees were, not even the faintest description of their supposed "insubordination," and no way for the court to discern for itself whether the anonymous males in question were similarly situated to Kelly (despite her failure to allege so).  The allegation merely suggests "the sheer possibility" that the Defendants acted

unlawfully without pleading sufficient "factual content for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Air Sunshine, Inc. v. Carl,* 663 F.3d 27, 33 (1st Cir. 2011). Moreover, this allegation fails to meet the third requirement for a claim of employment discrimination under the MHRA because the outcome of the termination hearing was that the Commissioners reinstated Kelly to her position, thus she suffered no adverse employment action as a result of this allegation.

Finally, Kelly alleges that she was treated differently than a "male IT support staffer" who was purportedly the lone male employee on the Sheriff's Office support staff. ECF No. 3-2 at 9-10, ¶ 35. Kelly claims that she "asked questions and raised issues" with a disciplinary notice and a performance plan that was presented to her at a May 21, 2020, meeting with Wainwright, Urquhart, and HR consultant Annalee Rosenblatt. *Id.* at 8-9, ¶¶ 31-33. Kelly alleges that in response, she was told not to "parse words" or "critique language." *Id.* at 9-10, ¶35. In contrast, Kelly claims that an unidentified male IT staffer made suggestions concerning "the policies" (Kelly does not identify which ones) and recommended that they be changed "so as not to preclude digital recording." *Id.* Kelly asserts that the unidentified male IT staffer's suggestions were accepted and incorporated into the unidentified policies. *Id.* This allegation fails to state a claim for employment discrimination under the MHRA for two reasons. First, it lacks sufficient factual content for the court to reasonably infer that the Sheriff's Office or Oxford County is liable to Kelly. *See Air Sunshine, Inc.,* 663 F.3d at 33, *supra.* Secondly, as with Kelly's other allegations above, she has failed to adequately allege that she was treated differently than similarly situated men. Even assuming that the unidentified male IT staffer was also part of the Sheriff's Office support staff, Kelly does not allege that he had ever been subject to discipline for any reason, or specifically for insubordination. Moreover, Kelly's own allegation states that the male IT staffer's

suggestions concerned digital recording, which presumably were within his area of responsibility as an IT support staffer. *Id.* In contrast, Kelly's "questions" and "issues" concerned a disciplinary notice and performance plan—human resources-related documents, the creation of which Kelly does not allege were within her areas of responsibility.

For the foregoing reasons, Count I of the Complaint should be dismissed for failure to state a claim.

## II.    PLAINTIFF'S COMPLAINT FAILS TO ADEQUATELY ALLEGE FACTS TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE MAINE WHISTLEBLOWER PROTECTION ACT AS AGAINST THE COUNTY DEFENDANTS.

Count II of Plaintiff's Complaint alleges that she was subjected to unlawful discrimination because she made "reports to both her employer and to the Oxford County Commissioners what she believed to be violations of the law and/or actions by the Oxford County Sheriff and his Office that resulted in risks to the health and safety of individuals." ECF No. 3-2 at 14, ¶¶ 47-48. Her Complaint otherwise makes no reference to specific details of any alleged violations of law or unsafe practices or conditions.

In order to state a claim of unlawful retaliation under Maine's Whistleblower Protection Act ("WPA"), a plaintiff must allege that "1) she engaged in activity protected by the WPA; (2) she experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Walsh v. Town of Millinocket*, 2011 ME 99, ¶ 24, 28 A.3d 610. Assuming without conceding that Plaintiff has sufficiently pleaded elements 2 and 3 of that standard, Plaintiff's Complaint is devoid of allegations that she engaged in activity that is protected under the WPA. As applicable to this case, protected activity under the WPA requires that the employee, acting in good faith, either (1) "reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a

law or rule adopted under the laws of this State, a political subdivision of this State or the United States," 26 M.R.S. § 833(1)(A), or "reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual," 26 M.R.S. § 833(1)(B). Plaintiff does not specify what violations of law or unsafe conditions or practices she may have reported. However, the allegations relevant to a purported claim of retaliation under the WPA are found in Paragraphs 10, 38, and 40 of the Complaint.

In *Ocasio-Hernandez*, 640 F.3d at 12, *supra,* the First Circuit explained that a court should identify and disregard statements in a complaint that merely offer "legal conclusions couched as fact" or "threadbare recitals of the elements of a cause of action." *Id*. A close look at the Complaint's allegations relating to the WPA are replete with such conclusions and recitals. Beginning with Paragraph 10, the allegations contained therein do not even rise to the level of a "threadbare recital of the elements of a cause of action" under the WPA. First, Kelly alleges that her attendance at Oxford County Commissioners' meetings over the course of her employment caused the Sheriff to be "concerned." ECF No. 3-2 at 2, ¶ 10. Kelly does not allege that she reported anything at these meetings, much less something she reasonably believed to be a violation of law or an unsafe condition or practice.  Moreover, the allegation is that the Sheriff was "concerned" by her attendance, a vague characterization that stops short of claiming that he took an adverse employment action as a result of Kelly's attendance at the meetings.[2]

Kelly also alleges that the Sheriff was concerned by her "willingness to address issues with the operation of the Office," including "unequal treatment of employees" and "ostensible cover up

---

[2] In fact, the Complaint alleges facts which suggest that the Sheriff's "concern" with Kelly's attendance of Oxford County Commission meetings stemmed from the fact that such meetings took place during business hours and that Kelly was absent from her desk during the meetings. See ECF No. 3-2 at 10-12, ¶¶ 37, 38.

of employee misconduct." *Id.* This allegation contains no detail as to what form such unequal treatment took or what constituted the "ostensible" employee misconduct.  Moreover, the allegation fails to assert that Kelly's "willingness to address issues" took the form of a report to her employer or a public body, as required under the WPA. 26 M.R.S. § 833(1).[3]  Kelly also fails to allege whether she reasonably believed that any of these unspecified "issues" constituted a violation of a law or rule or that they posed a risk to her or anyone else's safety. Thus, allegations in Paragraph 10 of the Complaint fall well short of stating a claim for retaliation under the WPA.

In Paragraph 38 of the Complaint, Kelly refers to "her attempts to bring to sunlight several issues in the Sheriff's Office and county writ large." ECF No. 3-2 at 11-12, ¶ 38. This allegation fails to state a claim for whistleblower retaliation because it is not buttressed by a single fact or claim as to what these issues were, when they occurred, who was responsible for them, whether Kelly reasonably believed that they constituted a violation of state law or regulation, or whether they constituted a condition or practice that put her or others' safety at risk. The allegation also fails to assert that Kelly's "attempts" took the form of a report to her employer or a public body, as required by the WPA. 26 M.R.S. § 833(1).

In paragraph 40, the Plaintiff alleges that in a November 4, 2019, meeting with HR consultant Annalee Rosenblatt, Kelly "explained the multiple issues that were going on in the Sheriff's Office that were concerning" including "inappropriate workplace behavior that [Plaintiff] considered to be unlawful." This allegation fails to state a claim for two reasons: first, Kelly failed

---

[3] Kelly does not allege that she reported issues concerning the operation of the Sheriff's Office at the Oxford County Commission meetings that she attended. *See* Complaint at 2, ¶ 10.  Instead, Kelly merely claims that the Sheriff was concerned about both her attendance *and* her willingness to address purported unequal treatment of employees and employee misconduct. This is in contrast to other allegations in which Kelly offers more detail regarding what she said to the Commissioners, such as in Paragraph 40, where she states that she asked the Commissioners "if they were comfortable with the actions taken by the Sheriff" and the Commissioners replied that they were. ECF No. 3-2 at 13, ¶ 40.

to allege that she reported the alleged inappropriate workplace behavior to her employer or a public body. As Plaintiff herself concedes, Rosenblatt is not even a county employee, much less the Plaintiff's employer or a "public body." ECF No. 3-2 at 4, fn. 2. Thus, the threshold requirements for a claim under the WPA are not met. 26 M.R.S. § 833(1). Secondly, the allegation that Plaintiff raised the issue of "inappropriate workplace behavior that [Plaintiff] considered to be unlawful," like the allegations contained in Paragraphs 10 and 38, is precisely the sort of conclusory legal allegation that should not be credited. There is no information as to what the inappropriate behavior is or was, when it occurred, who engaged in such behavior, or to whom such behavior was directed, if anyone. The claim is "merely consistent with [the] defendant's liability," *Germanowski*, 854 F.3d at 71-72, but offers "legal conclusions couched as fact" rather than sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable for the alleged "inappropriate workplace behavior." *Ocasio-Hernandez* 640 F.3d at 12 (quoting *Iqbal* at 678).

The Plaintiff also alleges in Paragraph 40 of the Complaint that on November 7, 2019, the Oxford County Commissioners held a meeting concerning a grievance filed by a "Sgt. Davis," where they "voted to pay the balance of sick time to Sgt. Davis despite the 'unconventional' handling of Davis' departure." ECF No. 3-2 at 13, ¶ 40. The Complaint goes on to allege that during the meeting, "Ms. Rosenblatt explained how the Sheriff had edited" Davis' resignation letter and that the Plaintiff "asked the Commissioners if they were comfortable with the actions taken by the Sheriff." *Id.* This allegation fails to state a claim because it does not assert that Kelly reported any violation of law or unsafe condition to the Commissioners as required under the WPA. 26 M.R.S. § 833(1). To the contrary, Kelly merely claims that she asked the Commissioners if they were "comfortable with the actions taken by the Sheriff," and the Commissioners responded

that they were.[4]  *Id.* This assertion does not even rise to the level of being "merely consistent with [the] defendant's liability," *Germanowski v. Harris*, 854 F.3d at 71-72, and does not give rise to a plausible claim for relief under the WPA.

For the reasons discussed above, Count II of the Plaintiff's Complaint should be dismissed for failure to state a claim.

## III.   PLAINTIFF'S COMPLAINT FAILS TO ADEQUATELY ALLEGE FACTS TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION AS AGAINST THE COUNTY DEFENDANTS.

Count III of Plaintiff's Complaint alleges that the Defendants took adverse employment actions against her because of her "expression of free speech" on public matters, in violation of her First Amendment rights. ECF No. 3-2 at 15, ¶ 51.  In order to state a First Amendment claim, Kelly must show (1) that she was speaking as a private citizen on a matter of public concern; (2) that her interests, as a citizen, in commenting upon matters of public concern outweighed her employer's interest in promoting the efficiency of the public services it performs through its employees; and (3) that the protected expression was a substantial or motivating factor in an adverse employment action. *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011). The allegations relevant to a purported First Amendment claim are found in Paragraphs 10, 11, 38, and 40 of the Complaint.

As discussed above with regard to her WPA claim, Kelly alleges in Paragraph 10 that the Sheriff was concerned by her "willingness to address issues with the operation of the Office[.]" ECF No. 3-2 at 2, ¶ 10. This allegation fails the first requirement of a First Amendment claim

---

[4] To the extent that anyone reported anything to the Oxford County Commissioners at their November 7, 2019, meeting (and there is nothing in Paragraph 40 that states or implies a violation of law took place or an unsafe condition existed as required by § 833(1) of the WPA), it was Ms. Rosenblatt, not the Plaintiff, who explained that the Sheriff had edited Sgt. Davis' resignation letter. ECF No. 3-2 at 13, ¶ 40.

because Kelly does not assert that her "willingness to address issues" in the Sheriff's office was in her capacity as a private citizen. *See Decotiis,* 635 F.3d at 29. To the contrary, the factual allegations contained in Paragraph 10 are that Kelly addressed matters concerning the office where she was employed and not as a member of the public.[5] *See* ECF No. 3-2 at 2, ¶ 10. Furthermore, Paragraph 10 contains no detail as to what form Kelly's "willingness to address" matters took. Did she speak to her boss? To coworkers? A third party? The reader can only speculate. Consequently, Paragraph 10 of the Complaint amounts to a claim drafted to appear "merely consistent with [the] defendant's liability," *Germanowski,* 854 F.3d at 71-72, but without offering sufficient "factual content to allow the court to draw a reasonable inference that the defendant is liable for violating Kelly's First Amendment rights. *Id.* (quoting *Iqbal,* 556 U.S. at 678).

Paragraph 11 of the Complaint alleges that, having tried and failed to convince the Sheriff to "attend to a pressing issue," Kelly bluntly asked him whether he "does anything." ECF No. 3-2 at 3, ¶ 11. Once again, the Plaintiff does not allege that she was speaking as a private citizen in what amounts to an angry outburst at her boss, and thus, this allegation does not meet the first requirement for a First Amendment claim. *See Decotiis,* 635 F.3d at 29.

In Paragraph 38, Kelly claims that the Sheriff sought to terminate Kelly due to "her attempts to bring to sunlight several issues in the Sheriff's Office and county writ large." ECF No. 3-2 at 11-12, ¶ 38. As discussed above with regard to Kelly's WPA claim, this allegation does not contain a single fact or claim that informs the court or the defendants as to what these issues were,

---

[5] As discussed in footnote 3, Kelly asserts that she attended Oxford County Commission meetings, but does not allege that she raised issues concerning the operation of the Sheriff's Office at the meetings she attended. *See* ECF No. 3-2 at 2, ¶ 10. Instead, Kelly merely claims that the Sheriff was concerned about both her attendance *and* her willingness to address purported unequal treatment of employees and employee misconduct. This is in contrast to other allegations in which Kelly actually claims that spoke to the Commissioners, such as in Paragraph 40, where she states that she asked the Commissioners "if they were comfortable with the actions taken by the Sheriff" and the Commissioners replied that they were. ECF No. 3-2 at 13, ¶ 40.

when they occurred, whom they concerned, and what Kelly's purported attempts to "bring to sunlight" consisted of. Kelly appears to imply that the Sheriff wanted to fire her because she was "attending Commissioners['] meeting[s] on her own time to talk about County issues," *id.*, yet later in the same paragraph undercuts this implication by stating that the Sheriff only questioned "the appropriateness" of her attending meetings. *Id.* To the extent that Kelly claims that she was suspended because she spoke about unspecified "issues in the Sheriff's office and county writ large" at meetings of the Oxford County Commission (and it is unclear if Paragraph 38 successfully articulates this), the allegation does no more than "merely parrot the contours of a cause of action," which the First Circuit has held to be insufficient to survive a motion to dismiss. *Parker,* 935 F.3d at 13-14.

In Paragraph 40 (which is also discussed above with regard to her WPA claim), Kelly alleges that she "explained multiple issues that were going on in the Sheriff's Office that were concerning," including "inappropriate workplace behavior and activities Joan considered to be unlawful." ECF No. 3-2 at 13, ¶ 40. Once again, this allegation fails the first requirement of a First Amendment claim because Kelly does not assert that she was speaking as a private citizen. *See Decotiis,* 635 F.3d at 29. Rather, Kelly claims that she spoke to Annalee Rosenblatt, an outside HR consultant who Kelly concedes was investigating a complaint for the Oxford County Sheriff's Office. ECF No. 3-2 at 13, ¶ 40. Thus, the concerns that Kelly claims to have raised concerned the same office in which she worked and were made to a consultant working for that office. *See* ECF No. 3-2 at 14, ¶ 40. Moreover, Paragraph 40 of the Complaint does not contain any detail regarding the multiple issues that Kelly claims to have raised with Rosenblatt; whose inappropriate workplace behavior was at issue and what it consisted of; or what laws were allegedly violated. As discussed above regarding Kelly's WPA claim, the allegations in Paragraph 40 are merely

"legal conclusions couched as fact" and lack sufficient factual content from which the court could draw a reasonable inference that the defendants suspended Kelly for her alleged private speech on a matter of public importance. *Ocasio-Hernandez,* 640 F.3d at 12 (quotation omitted).

Finally, Kelly alleges in Paragraph 40 that on November 7, 2019, the Oxford County Commissioners held a meeting concerning a grievance filed by a "Sgt. Davis," ECF No. 3-2 at 13, ¶ 40, the details of which are discussed in greater detail, above. After the Commissioners allegedly voted on the matter, Kelly asserts that she "asked the Commissioners if they were comfortable with the actions taken by the Sheriff," and the Commissioners responded that they were. *Id.* Kelly does not allege that this event was a substantial or motivating factor in her suspension, and thus the allegation fails the third requirement for a violation of the First Amendment. *See Decotiis,* 625 F.3d at 29.  In fact, far from experiencing an adverse employment action as a result of speaking at the November 7 meeting, Kelly claims that the day after the Commissioners' meeting, she was given an opportunity to meet with Rosenblatt a second time to further discuss her concerns.  ECF No. 3-2 at 13, ¶ 40.

For the foregoing reasons, Count III of Plaintiff's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

**III.  PLAINTIFF'S COMPLAINT FAILS TO ADEQUATELY ALLEGE FACTS TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS AGAINST THE COUNTY DEFENDANTS.**

Count IV of Plaintiff's Complaint alleges two violations of the 14th Amendment of the United States Constitution based on equal protection and due process.

A.  Equal protection.

Kelly alleges that Defendants violated her constitutional equal protection rights by discriminating against her on the basis of sex. Her claim is not brought under Title VII, the federal

14

counterpart to the Maine Human Rights Act (MHRA) which prohibits discrimination in employment on the basis of a protected classification; therefore, the standards that apply to pleading an Equal Protection claim are different than the less stringent standards for pleading under the MHRA or Title VII. See, e.g., *Charette v. St. John Valley Soil & Water Conservation Dist.*, 2017 WL 2683951 (D.Me. June 20, 2017). In *Charette*, the court noted that to state a claim for relief under the MHRA, a complaint need only "plausibly allege that the plaintiff experienced an 'adverse employment action' on the basis of her sex…." *Id.* at *8 (citations omitted). "However, the First Circuit has made clear that an Equal Protection claim involves an additional element not present in garden-variety employment discrimination claims – '[s]ome evidence of actual disparate treatment is a threshold requirement of a valid equal protection claim.'" *Id.* at *14 (quoting *Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2012)). See also *King v. Maine Dep't of Corrections*, 2015 WL 2092526 (D.Me. May 5, 2015) ("To state a claim for violation of equal protection, the plaintiff must allege that she was treated differently than were others similarly situated, and that the difference in treatment was based on an impermissible consideration.").

Here, Kelly has attempted to make allegations that she was treated differently than other male County employees; however, she has failed to allege that she was similarly situated to the male employee comparators. As discussed above, Kelly generally alleges that other male employees had similar insubordinate confrontations with the Sheriff and were not disciplined, she provides only two "examples" – one in which Chief Deputy Urquhart allegedly had a loud confrontation with the Sheriff ending with the Chief walking off the job, later to return without being disciplined; and one in which Lt. Chancey Libby loudly confronted the Sheriff (what the alleged confrontation was about is not specified) and walked off the job, later to return with no disciplinary consequences. ECF No. 3-2 at 10-11, ¶ 37. Those allegations fail to demonstrate that

Plaintiff, a female, was similarly situated to those male employees. First, the two male employees were both high-ranking law enforcement officers, while Plaintiff was a member of the office support staff who had been employed with the County for approximately a year and a half. Plaintiff's own Complaint alleges a difference in the treatment of "support staff" versus law enforcement officers by the County, and Plaintiff has failed to allege any basis on which the Court could conclude that the two male law enforcement officers were similarly situated to the Plaintiff. Secondly, while Plaintiff's Complaint alleges that the two male law enforcement officers had "loud confrontations" with the Sheriff, Plaintiff does not allege that those two male officers had asked the Sheriff whether he "does anything?", or any similar blatantly insubordinate statements. ECF No. 3-2 at 3, ¶ 11. There are no specific allegations on the origins or contents of the "loud confrontations" with the male employees to plausibly state a claim that Plaintiff was similarly situated and yet treated differently on the basis of her sex. Nor has Kelly otherwise alleged that she was similarly situated to male employees, as discussed with regard to her MHRA claim, above. As such, Kelly has failed to state a claim for violation of the Equal Protection clause.

   B. Due process.

   Kelly's claim under the Due Process Clause of the Fourteenth Amendment is even sparser in its details. She alleges that Defendants violated her "rights under 30-A M.R.S. § 501, *et seq.* that she should not be dismissed, suspended or otherwise disciplined except for cause and with the approval of the County Commissioners." ECF No. 3-2 at 17, ¶ 65.

   "To state a procedural due process claim, a plaintiff 'must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process.'" *Farris v. Poore*, 841 F.Supp.2d 436, 439 (D.Me. 2012) (quoting *SFW Arecibo, Ltd. v. Rodriguez*, 415 F.3d 135,

139 (1ˢᵗ Cir. 2005)). Like the Plaintiff here, the plaintiff in *Farris* claimed that his procedural due process rights were violated by the Town Manager being permitted to make the final decision to terminate his employment, where the Town Manager had no such authority under Maine law. Kelly's claim appears to be that the Sheriff imposed discipline, an administrative suspension with a recommendation for termination, without first obtaining approval of the County Commissioners. In *Farris*, the court noted that such a claim amounted to a "random and unauthorized" flaw in the official's conduct rather than a flaw in the state law itself, and the "procedural due process claim was 'limited to the issue of the adequacy of the post-deprivation remedies provided by the state.'" *Id.* (quoting *Hadfield v. McDonough*, 407 F.3d 11, 19-20 (1ˢᵗ Cir. 2005)). "There is no federal procedural due process claim where 'the denial of due process was caused by the random and unauthorized conduct of government officials and where the state has provided adequate post-deprivation remedies to correct the officials' random and unauthorized acts.'" *Farris*, 415 F.3d at 440 (quoting *Hadfield*, 407 F.3d at 19-20).

Here, after the Sheriff imposed an administrative suspension on her and recommended her termination, Kelly admits that she was given a "*Loudermill*" hearing with Chief Urquhart and a two-day hearing before the County Commissioners. ECF No. 3-2 at 3-4, ¶¶ 15, 18. Not only was Kelly afforded due process; the County Commissioners agreed that she should be reinstated to her job. ECF No. 3-2 at 5, ¶ 21. The County complied with that requirement and reinstated Kelly to her position, only to have her resign and walk out on her first day back. Therefore, Kelly does not adequately allege that the County failed to afford her adequate post-deprivation remedies; rather, those remedies were available to Kelly and she in fact utilized them. Kelly's bare-bones two-sentence attempt to set forth a violation of the Due Process Clause of the United States

Constitution, ECF No. 3-2 at 17, ¶¶ 65-66 does not set forth a plausible claim under the *Iqbal/Twombly* standard.

## IV.    COUNT VI, SEEKING PUNITIVE DAMAGES, IS NOT A SEPARATE CAUSE OF ACTION BUT RATHER A REMEDY ONLY, AND SHOULD BE DISMISSED.

As noted in footnote 1, *supra*, punitive damages are a remedy only, not a separate cause of action. Indeed, Kelly includes requests for punitive damages as a remedy in most of her separate causes of action in any event. Count VI should be dismissed.

## CONCLUSION

For all the foregoing reasons, Counts I, II, III, IV and VI of the Plaintiff's Complaint fail to state a claim as against the County defendants, and those counts should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).


Dated:  November 2, 2022                    /s/ Peter Marchesi
                                            Peter T. Marchesi, Esq.
                                            Wheeler & Arey, P.A.
                                            Attorneys for Defendants Oxford County
                                            and Oxford County Sheriff's Office
                                            27 Temple Street
                                            Waterville, ME  04901


                                            /s/ Michael Lichtenstein
                                            Michael Lichtenstein, Esq.
                                            Wheeler & Arey, P.A.
                                            Attorneys for Defendants Oxford County
                                            and Oxford County Sheriff's Office
                                            27 Temple Street
                                            Waterville, ME  04901

# UNITED STATES DISTRICT COURT
## District of Maine

JOAN M. KELLY,                          )
              Plaintiff          )
                         )
v.                                      )
                         )          Docket No. 2:22-cv-00341-LEW
OXFORD COUNTY, OXFORD COUNTY            )
SHERIFF'S OFFICE, CHRISTOPHER R.        )
WAINWRIGHT, AND JAMES H.                )
URQUHART,                               )
              Defendants          )

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Lichtenstein, hereby certify that:

- Motion for Partial Dismissal by Oxford County and Oxford County Sheriff's Office

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

        Adam R. Lee, Esq.          *Alee@tmbf-law.com*

Dated:  November 2, 2022          /s/ Michael Lichtenstein
                                    Michael Lichtenstein, Esq.
                                    Wheeler & Arey, P.A.
                                    Attorneys for Defendants Oxford County
                                    and Oxford County Sheriff's Office
                                    27 Temple Street
                                    Waterville, ME  04901