UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOAN M. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00339-LEW |
| | ) | |
| OXFORD COUNTY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

In this removed action, Joan Kelly, formerly the Oxford County Sheriff's Clerk, alleges that Oxford County, Sheriff Christopher Wainwright, and Chief Deputy Sheriff James Urquhart violated her state and federal rights.  The matter is before the Court on the Defendants' motions to dismiss.  Oxford County's Motion to Dismiss (ECF No. 12); Wainwright and Urquhart's Motion to Dismiss (ECF No. 13).

"To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up).  Plausible "means something more than merely possible," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012), but is "not akin to a 'probability requirement.'" *Iqbal*, 556 U.S. at 678.  Ultimately, "a well-pleaded complaint may proceed even if . . . recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation omitted).  However, "[i]f the

1

factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

## BACKGROUND

To evaluate a motion to dismiss, a court begins by "separat[ing] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012). The factual allegations reflect the following.

Joan Kelly began working for Oxford County as the Sheriff's Clerk in April 2018. During her tenure, Kelly would arrange for coverage in the office during meetings of the Oxford County Commissioners so that she could attend the meetings, evidently with the approval of her direct supervisor, who was not the Sheriff. The Sheriff did not approve of Kelly's practice of attending the meetings during the workday but did not instruct her not to attend. At the meetings, on occasion, Kelly would address the Commissioners concerning "issues with the operation of the [Sheriff's] Office, including with respect to the unequal treatment of employees, and [the] ostensible cover up of employee misconduct." First Am. Compl. ¶ 10.

One Friday in December 2019, frustrated by the Sheriff's failure to attend to a matter raised by a community member, Kelly vocalized the thought, in front of the Sheriff, that he did not actually do anything. This did not go over well with the Sheriff, who told Kelly he intended to remove her from her position as clerk. The following week, Sheriff

2

Wainwright placed Kelly on administrative leave and initiated her termination proceeding by recommending to the County Commissioners that she be removed from office.

In January 2020, Kelly met with Chief Deputy Urquhart for a preliminary hearing. At this hearing, Urquhart expressed the view that Kelly's insubordinate comment did not deserve termination and that he had said as much to the Sheriff. Evidently, Kelly recorded the comments. Explaining himself, Urquhart compared Kelly's behavior to that of certain male officers and observed that they had not been subjected to any discipline, unlike her.

In February 2020, Kelly went before the Commissioners for a more formal termination hearing. Kelly alleges that Urquhart contradicted statements he had made to her during her informal hearing with him, which statements she had recorded. Specifically, Urquhart acknowledged that sometimes officers had been insubordinate, but told the Commissioners that the conduct in question was not as insubordinate as Kelly's comment.[1] The Commissioners agreed that the situations were different, but still concluded that termination was too severe a measure for Kelly's comment. On February 18, 2020, the Commissioners publicly confirmed their findings, effectively clearing the way for Kelly to return to work.

However, the matter of discipline was not overlooked. On March 19, 2020, Kelly met with Annalee Rosenblatt, an HR advisor retained by the County under contract. Rosenblatt presented Kelly with a notice form stating that Kelly would have a one-week

---

[1] On one occasion, the Chief Deputy raised his voice to the Sheriff during a "confrontation" related to an incident in which a sergeant crashed a county cruiser. On another occasion, a male lieutenant "loudly confronted" the Sheriff over a promotional issue. FAC ¶ 39.

suspension without pay and was from that time forward under a six-month probationary cloud. Kelly also received a performance improvement plan that reminded her that she should demonstrate loyalty and support to the Sheriff and the Chief Deputy. Kelly complains that the document contained errors and imposed arbitrary discipline unrelated to her act of insubordination.[2] Kelly informed Rosenblatt of the issues she perceived and evidently expected that the document would be revised. Kelly also alleges that she vocalized to Rosenblatt what she considered to be "violations of law," FAC ¶ 27, but she does not articulate what the supposed violations of law were.

In late March, before her return date from the one-week, unpaid suspension, Chief Deputy Urquhart notified Kelly not to return as planned due to the spread of the COVID-19 pandemic. Kelly says this was a pretext for keeping her away from the office because no other employees[3] were instructed to remain out of work. This status continued until May 18. On May 14, Chief Deputy Urquhart emailed Kelly a disciplinary notice and the performance improvement plan and advised her that she would need to sign them before returning to work. Kelly was upset with the documents because they "continued to contain elements that had nothing to do with the matters for which she was disciplined, fundamentally altered her job status, and precluded her from participation in public meetings." FAC ¶ 33.

---

[2] Kelly elsewhere alleges that she was instructed not to record conversations in the office, to obtain permission to leave during the workday, and to not discuss office business outside of the office. As to the discussion of office business, Kelly states that she never did. However, she also alleges in her complaint that she would raise office matters with the Commissioners at their meetings.

[3] Kelly elsewhere alleges that there are other support staff employees, all of whom are female other than one male IT support staff member.

On May 21, Kelly returned to the office "with every intention of trying to give it her all."  FAC ¶ 34.  At a preliminary meeting with Sheriff Wainwright, Chief Deputy Urquhart, and Rosenblatt, Kelly was presented with the disciplinary notice for her signature, which notice continued to contain the content that she objected to.  Evidently, Kelly was quite frustrated by the inclusion of a statement that she interpreted as preventing her attendance at public meetings during the workday.  She also did not like the probationary statement.  Kelly expressed the view that the Sheriff had been discourteous to her and reminded the Chief Deputy that he had been untruthful at the termination hearing with the Commissioners.  Rosenblatt told Kelly that if she had an issue with the way the new policy might be enforced she could take the issue to Rosenblatt for review.  Kelly stated that she was doing so at that very moment.  Evidently, during the same meeting, Kelly expressed concerns over "the Department's infectious disease policy."  FAC ¶ 37.  She was told that the meeting was not designed for her to vocalize policy critiques.  When she noted that her job had been restructured to permit the Sheriff "to terminate her without any oversight," the Sheriff "shrugged his shoulders and smirked."  *Id.*

Kelly left the meeting, retrieved her personal belongings, and provided a letter of resignation to the County Administrator.

## DISCUSSION

Joan Kelly asserts five causes of action: (1) sex discrimination under the Maine Human Rights Act; (2) whistleblower retaliation under the Maine Whistleblower Protection Act; (3) retaliation for expression protected by the First Amendment; (4) violation of the equal protection clause and the due process clause; (5) defamation; and (6)

punitive damages.  The Defendants contest each of Kelly's claims.  I address each cause

of action in turn, beginning with the federal claims that bring the case to this Court.

## I.   FEDERAL CLAIMS

### A.     Speech Retaliation (Count III)

To state a speech-retaliation claim, a plaintiff must allege facts sufficient to permit

the inference that her speech (1) related to a matter of public concern and (2) was a

substantial or motivating factor in an adverse employment consequence.  *Gutwill v. City of*

*Framingham, Mass.*, 995 F.3d 6, 12 (1st Cir. 2021).   In this context, an adverse

employment consequence includes an action that would deter a reasonably hardy individual

from exercising her constitutional rights.  *Id.*   Kelly's allegations are sufficient to state a

claim.

Defendants challenge the allegations on a separate score.  They contend that a

reading of the FAC will not support an inference that Kelly spoke to the Commissioners as

a private citizen rather than as a county employee.  The First Circuit has explained that the

right to speak out is qualified when the speaker is a government employee and the speech

concerns the employee's own workplace.  *McGunigle v. City of Quincy*, 835 F.3d 192, 202

(1st Cir. 2016).  Consequently, the first element of the standard for liability is read as

requiring that the employee have spoken out in the capacity of a citizen on a matter of

public concern.  *Id.*   With this challenge Defendants have highlighted a weakness in

Kelly's claim.  Her speech allegations are, indeed, rather meagre and make differentiation

between private-citizen and public-employee speech difficult.  Nevertheless, I conclude

that the allegations are not "too meagre" for purposes of notice pleading under the Federal

Rules of Civil Procedure.  *Tambone*, 597 F.3d at 442.  Kelly's complaint is not devoid of

content and the legal standard requires that inference be drawn in her favor based on her

allegations.  Kelly's allegations are sufficient to state a plausible claim even though the

allegations suggest that the likelihood of recovery is remote.[4]

**B.      Equal Protection (Count IV)**

"In an equal protection case, the court considers (1) whether the plaintiff was treated

differently than others similarly situated and (2) whether such difference was based on an

impermissible consideration, such as [sex]."  *Ayala-Sepulveda v. Municipality of San*

*German*, 671 F.3d 24, 32 (1st Cir. 2012) (cleaned up).  Plaintiffs must identify and relate

specific instances in which persons "situated similarly in all relevant aspects" were treated

differently, such that the factfinder could infer that they were "singled out for unlawful

oppression."  *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (quoting *Rubinovitz*

*v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)).  Conduct that appears to meet the elements of

the legal standard might, nonetheless, not give rise to liability if it can be justified as serving

an important governmental objective and is substantially related to the achievement of that

objective.  *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896 (1st Cir. 1988) (internal

quotation marks omitted).

The Defendants' chief challenge is that Kelly cannot demonstrate disparate

treatment of a male employee who was similarly situated to her because she was a member

of the office support staff and her male exemplars were "high-ranking law enforcement

---

[4] However, I agree with Defendants that Kelly's remark to the Sheriff that he does not do anything is not the kind of speech that would support her first amendment claim.

officers." Oxford County's Motion to Dismiss at 18. Defendants also observe that the comparator circumstances involved only raised voices, not "blatantly insubordinate statements." *Id.* Again, Defendants have identified significant weaknesses in Kelly's allegations. I am not persuaded, however, that this weakness calls for summary dismissal of this claim, particularly given that other claims in the case are moving forward.

**C.      Due Process (Count IV)**

As far as the Due Process Clause is concerned, Kelly alleges that Defendants violated her "rights under [state law] that she should not be dismissed, suspended[,] or otherwise disciplined except for cause and with the approval of the County Commissioners." FAC ¶ 72. She further alleges that "Defendants' actions sought to remove this due process right[] and ostensibly change the circumstances of her employment so as to preclude her due process rights." FAC ¶ 73. In other words, she does not allege that "the hearing she was afforded" was not adequate, but rather that upon her return to work it was unlawful for the Sheriff "to arrogate to himself unilateral authority to terminate [her] without a hearing" by including such a condition in her performance improvement plan. Plaintiff's Opp'n at 9 (ECF No. 18).

Kelly may well have a point that there was no basis in law for Sheriff Wainwright to impose a probationary condition following the Commissioners' determination that cause for termination was not demonstrated. However, assuming there is something to that contention as a matter of Maine law, I fail to see how it would support a claim for violation of procedural due process. Had Kelly not resigned and had Sheriff Wainwright later purported to terminate her in the absence of process based on her probationary status, then

in that instance there would be a due process claim worthy of consideration.  But those events did not come to pass.  Accordingly, the due process claim will be dismissed.

## II.   STATE CLAIMS

### A.   Sex Discrimination (Count I)

Defendants' challenge to Kelly's Maine Human Rights Act claim is the same as their challenge to the equal protection claim, i.e., that Kelly has failed to allege an appropriate male comparator in support of her allegation of disparate treatment.  For the reasons stated previously, I reject this challenge at the motion to dismiss stage though I recognize that the critique has some persuasive force.

Defendants' discussion of the Maine Human Rights Act claim does, however, identify a non-actionable contention in Kelly's complaint.  Specifically, Kelly contends that she experienced adverse disparate treatment in response to her attempt to improve the wording of the Department's infectious disease policy during her meeting with Sheriff Wainwright, Chief Deputy Urquhart, and Rosenblatt on her return to the office.  When she did, she was informed that it was not the time to parse words or critique language.  Kelly alleges that this was unlike the way the Department responded to a suggestion by a male member of the IT staff who flagged a need for revisions to the Department's "audio/visual recording equipment policy."  FAC ¶ 37.

To be actionable, disparate treatment must entail adverse employment action, something that materially changes the conditions of employment.  *Berounsky v. Oceanside Rubbish, Inc*., 2022 ME 3, ¶ 11, 266 A.3d 284, 288.  Kelly's allegation of disparate treatment regarding the wording of policies is not actionable because it was not materially

adverse.  This determination merely limits the reach of Kelly's Maine Human Rights Act claim.  It does not require dismissal of the claim.

**B.       Whistleblower Protection (Count II)**

A claim under Maine's Whistleblower Protection Act requires proof of three elements: (1) the employee engaged in whistleblowing activity protected by the Act; (2) the employee experienced an adverse employment action; and (3) a causal connection existed between the whistleblowing and the adverse employment action.  *Pushard v. Riverview Psychiatric Ctr.*, 2020 ME 23, ¶ 15, 224 A.3d 1239, 1243.  To be protected under the Act, the whistleblowing activity must fit within certain statutory language.  For present purposes, whistleblowing activity includes an oral or written report "to the employer or a public body what the employee has reasonable cause to believe is a violation of law or rule adopted under the laws of this State, a political subdivision of this State or the United States." 26 M.R.S. § 833(1)(A).  It also includes a report concerning "what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual." *Id.* § 833(1)(B).

Defendants argue that Kelly has not alleged facts to support an inference that she blew the whistle about anything she might reasonably have perceived to be a violation of law or rule or hazardous to the health or safety of others.  Based on my review of the complaint, it appears that Kelly was uncommonly vocal about the goings on within the Department and whether everything was as it should be.  The descriptions that Kelly provides in her FAC for the issues she spoke on appear, arguably, to relate to matters of legal compliance or public safety.  *See* FAC ¶¶ 10, 40, 42-47.  As with other claims

discussed in this Order, it is not apparent from the pleadings that the prospect of liability is more than remote.  Nevertheless, I find the allegations minimally sufficient to overcome a motion to dismiss.

## C.      Defamation (Count V)

Kelly concedes that her defamation claim is time barred.  Pl's Opp'n at 1 n.1. Accordingly, Count V will be dismissed.

## D.      Punitive Damages (Count VI)

Because the availability of punitive damages is a question of remedy rather than a free-standing cause of action, Count VI will be dismissed without prejudice.

## CONCLUSION

Oxford County's Motion to Dismiss (ECF No. 12) and Wainwright and Urquhart's Motion to Dismiss (ECF No. 13) are GRANTED IN PART and DENIED IN PART.  Count IV is dismissed, with prejudice but only in part, solely with regard to Plaintiff's due process claim. Count V is dismissed with prejudice in its entirety.  Count VI is dismissed without prejudice to Plaintiff's remedial pleas for punitive damages.  Additionally, Plaintiff's contention that she suffered sex-based discrimination due to the Sheriff and the Chief Deputy's reaction to her critique of the Department's infectious disease policy—a component of Counts I and IV—is hereby deemed non-actionable.

SO ORDERED.

Dated this 16th day of March, 2023.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE